### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

TERRY KEENE,                                          *

        Plaintiff,                                  *

        vs.                                            *          Civil Action No.   ADC-16-0725

CAROLYN W. COLVIN,                                    *
Acting Commissioner,                                  *
Social Security Administration,                       *

        Defendant.                                 *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

On March 11, 2016, Terry Keene ("Plaintiff") petitioned this court to review the Social

Security Administration's ("SSA") final decision to deny her claim for disability insurance

benefits. *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each

parties cross-motions for summary judgment (ECF Nos. 16, 17, and 18), the Court finds that no

hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). In addition, for the reasons that follow,

Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for

Summary Judgment (ECF No. 17) is GRANTED, and the decision of the Social Security

Administration is AFFIRMED.

### PROCEDURAL HISTORY

On May 31, 2012, Plaintiff filed a Title II application for a period of disability and

disability insurance benefits ("DIB"). Her claim was denied initially and upon reconsideration on

July 27, 2012 and May 6, 2013, respectively. Subsequently, on May 22, 2013, Plaintiff filed a

written request for a hearing and, on September 11, 2014, a video hearing was held before an

Administrative Law Judge ("ALJ"). On October 17, 2014, the ALJ rendered a decision granting

Plaintiff's claim for DIB beginning on July 1, 2014, the onset date of Plaintiff's severe mood disorder, but denying Plaintiff's claim for DIB prior to that date. *See* ECF No. 11 at 29-38. Thereafter, on November 24, 2014, Plaintiff requested review of the ALJ's denial of DIB prior to July 1, 2014. On January 21, 2016, the Appeals Council affirmed the ALJ's decision. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On March 11, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's final decision. On November 14, 2016, Plaintiff filed a Motion for Summary Judgment. On January 13, 2017, Defendant filed a Motion for Summary Judgment. On January 30, 2017, Plaintiff filed a Response to Defendant's Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement, Defendant's Motion for Summary Judgment, and Plaintiff's Reply.[1]

### STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review

---

[1] On January 31, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that he is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security

Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social Security Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement

of 12 months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c), 416.909.

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96–8p. In evaluating a claimant's RFC, the ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, however, the burden of

proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found, at step one, that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 24, 2012. ECF No. 11 at 31. At step two, the ALJ found that Plaintiff had the following severe impairments: back disorder, status post spinal cord stimulator, diabetes mellitus, hypertension, peripheral neuropathy, status post breast cancer, thyroid disorder and polyarthritis since May 24, 2012 and mood disorder since July 1, 2014. *Id.* The ALJ further found that the aforementioned impairments were expected to last a period of twelve months. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ determined that, prior to July 1, 2014, Plaintiff had the residual functional capacity to "perform sedentary work as defined in 20 CFR 416.967(a), except she could stand and walk only 2 hours in an 8-hour workday; she could perform no more than occasional postural activity; and she could not perform jobs requiring climbing, balancing, or

exposure to heights and hazards." *Id.* at 33. The ALJ further determined that, beginning on July 1, 2014, due to the onset of Plaintiff's severe mood disorder, Plaintiff's RFC included the additional limitation that "she could perform only simple, routine, repetitive tasks due to limitations in concentration, persistence, and pace." *Id.* at 36. Based on the RFC assessment, the ALJ then determined that (1) from the alleged onset date of May 24, 2012 until July 1, 2014, Plaintiff was capable of performing her past relevant work as a corrections clerk; and that (2) from July 1, 2014 on, Plaintiff's residual functional capacity prevented her from being able to perform any past relevant work. *Id.* at 37.

Finally, at step five, the ALJ determined that, "[Plaintiff] was not disabled prior to July 1, 2014" but "[s]ince July 1, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 37-38. Thus, the ALJ granted Plaintiff's claim for DIB beginning on July 1, 2014 but denied Plaintiff's claim for DIB prior to that date. *Id.* at 38.

### DISCUSSION

Plaintiff raises three allegations of error on appeal of the ALJ's denial of disability prior to July 1, 2014: (1) that the ALJ failed to properly evaluate Plaintiff's impairments at step three of the sequential evaluation; (2) that the ALJ erred in determining Plaintiff could perform past relevant work at step four of the sequential evaluation; and (3) that the ALJ erred in evaluating Plaintiff's RFC. Each of Plaintiff's arguments lack merit and are addressed below.

### A. The ALJ's Evaluation of the Medical Severity of Plaintiff's Impairments Pursuant to Step Three of the Sequential Evaluation was proper.

At step three of the sequential evaluation, the "listed impairments" step, the ALJ must determine if the claimant's impairment(s) meet or equal one or more of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Where a claimant can show that her condition "meets or

equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Social Security Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *See McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability."). The burden of proof is on the claimant to show that she meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ in the present case concluded that "[t]he severity of claimant's physical impairments, considered singly and in combination, does not meet or medically equal the criteria of listings 1.02, 1.04, 4.02-4.04, 9.00, 11.14, and 13.10." Plaintiff contends that the ALJ's reasoning was conclusory and did not apply any findings or medical evidence to the identified disability listings. Primarily citing two Fourth Circuit cases, *Fox v. Colvin*, 632 Fed. Appx. 750 (4th Cir. 2015), and *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)), Plaintiff argues that remand is appropriate because the ALJ "offered nothing to reveal why he was making his decision." ECF No. 16 at 9 (quoting *Radford*, 734 F.3d at 295).

An ALJ has a duty to explain the decision so as to enable meaningful judicial review. *See Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and ... sufficiently explained the weight he has given to obviously probative exhibits." *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Furthermore, remand is appropriate where, "[the] ALJ's opinion failed to apply the requirements of the listings to the medical record." *Radford*, 734 F.3d at 291-92; *see also Fox v. Colvin*, 632 Fed. Appx. 750 (4th Cir. 2015) (holding that ALJ's conclusory and perfunctory analysis, at step three of five-step sequential evaluation necessitated remand).

In *Cook v. Heckler*, 783 F.3d 1168 (4th Cir. 1986), the Fourth Circuit ordered remand of a denial of Social Security insurance benefits to a widow because the ALJ failed to identify the relevant listings at step three of the sequential evaluation and explicitly compare them to the claimant's symptoms. *Id.* The Court further found that there was "ample evidence in the record to support a determination" that the claimant's condition met one of the impairments. *Id.* at 1172. Thus, the Court held that, "[t]he ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.* at 1173.

In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D. Md. 2002) (holding that remand is not warranted "where it is clear from the record which [L]isting ... was considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing court] readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion."); *Dunford v. Astrue*, BPG–10–0124, 2012 WL 380057, at*3 (D. Md. Feb. 3, 2012) (same); *see also Coble v. Colvin*, No. 7:12CV197, 2013 WL 4597149, at *5 (W.D. Va. Aug. 29, 2013) ("discussion of the relevant evidence elsewhere in the ALJ's opinion may demonstrate that, regardless of a concise discussion at step three, the ALJ fully and properly considered all the relevant evidence in his or her step three analysis); *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002) (affirming where the ALJ not only examined the medical evidence relevant to the

Listings at step four, but also did so in a manner which tracked the requirements of the step three

Listings analysis).

Here, unlike *Fox*, *Radford*, and *Cook*, the ALJ's analysis at step four provided sufficient

discussion of the medical evidence pertinent to each of the relevant step three listings. For

example, to satisfy Listing 1.02 Plaintiff was required to show "[i]nvolvement of one major

peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate

effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02(A). The "inability

to ambulate effectively" is defined in 1.00(B)(2)(b) as an "extreme limitation of the ability to

walk." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b). To "ambulate effectively" on the other

hand, individual's "must be capable of sustaining a reasonable walking pace over a sufficient

distance to be able to carry out activities of daily living" and "must have the ability to travel

without companion assistance to and from a place of employment or school." *Id*. The ALJ's

analysis at step four clearly articulated that Plaintiff had the ability to ambulate effectively,

noting that "she continues to perform a wide range of daily activities which would contraindicate

disabling pain" and that "claimant does not require any assistive device."

Similarly, to satisfy Listing 1.04, Plaintiff was required to show that her disorders of the

spine (degenerative disc disease, spondylolisthesis, and status post spinal cord stimulator)

resulted in nerve root compression characterized by: (1) neuro-anatomic distribution of pain; (2)

limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the

lower back; (4) positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P,

App. 1, 1.04(A).; *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013). The ALJ's step four

analysis contained a lengthy discussion of Plaintiff's spinal impairments, noting:

In terms of claimant's alleged back pain, the medical evidence reflects that the claimant experiences chronic radiating lower back pain with lower extremity pain and weakness secondary to degenerative disc disease at L4-L5 with grade 1 spondylolisthesis L5-S1, as shown on the MRI scan done on November 28, 2011 (Ex. 2F). She has no history of back surgery, but underwent spinal cord stimulator placement for failed back syndrome refractory to maximum medical management on July 3, 2012 (Exs. 6F and 7F/14). At follow up at the pain clinic on July 25, 2012, Stephen Wills, M.D. noted that the claimant demonstrated SI joint tenderness bilaterally, diminished sensation and reflexes in the lower extremities bilaterally, impaired coordination, and an antalgic gait (Ex. 7F/18). On September 24, 2012, the claimant was doing well with the spinal cord stimulator, but had developed right hip pain secondary to right sacroiliac joint dysfunction for which a sacroiliac joint injection was administered (Ex. 7F/23) and 20F). Since that time, she has received minimal, conservative treatment for back pain. Lumbosacral spine x-rays done on August 2, 2013 showed anterolisthesis L5 and S1, degenerative in nature, while views of right knee also showed degenerative disease at the patellofemoral compartment (Ex. 12F/14). The claimant does not require any assistive device.

ECF No. 11 at 34. Thus, the ALJ's step four analysis detailed the various clinical findings that were relevant to the requirements of Listing 1.04A. Notably absent from that analysis was any evidence of a positive straight-leg raising test. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Additionally, the ALJ's explanation detailed the effectiveness of the administered treatments on Plaintiff's existing spinal symptoms. Thus, the ALJ has properly shown that substantial evidence supports his conclusion that Plaintiff cannot meet Listing 1.04A.

Listing 9.00 (Endocrine disorders) directs the ALJ to "evaluate impairments that result from endocrine disorders under the listings for other body systems." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 9.00(B). With respect to Plaintiff's diabetes mellitus, hypertension, peripheral neuropathy, and thyroid disorder, the ALJ noted:

Records from the claimant's primary care physician show that she is routinely followed for non-insulin dependent diabetes mellitus type II with mild peripheral neuropathy causing decreased sensation in the lower extremities. However,

neurological examinations reveal normal motor function and laboratory studies show that her blood glucose levels are well-controlled with oral medication. She has no significant complications related to the disease (Exs. 4F, 7F, 17F, and 23F). The claimant's primary care physician also follows her conservatively for thyroid disease and obstructive sleep apnea. Her lungs are clear on chest x-rays and physical examinations, but she has been advised to use a CPAP (Exs. 7F, 17F/12, and 18F/11F).

ECF No. 11 at 35-36. In doing so, the ALJ properly discussed the evidence relevant to Listings 4.02-4.04 (Cardiovascular system impairments)[2] and 11.14 (Peripheral neuropathies)[3], making clear the reasons why Plaintiff's symptoms did not meet each listing.

Finally, the ALJ's step four analysis included a lengthy discussion of Plaintiff's status post breast cancer in which the ALJ concluded that Plaintiff had "completed cancer treatment without significant complications, and has no signs of recurrence or metastases." ECF No. 11 at 35. The ALJ then summarized the medical evidence in support of that conclusion, noting the following clinical findings:

> On January 28, 2013, [Plaintiff's] oncologist noted a stable breast cancer examination with no evidence of local or regional recurrence (EX. 8F/22).
>
> ...
>
> On November 12, 2013, radiation oncologist, William Woods, MD reported that the claimant was doing very well with no complaints related to the breast. She had no pain, tenderness, swelling or nodularity of the breasts, no upper extremity edema, no focal neurological deficits, no shortness of breath, and no bone pain.

---

[2] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 4.00(A)(1)(b) (requiring "one or more of four consequences of heart disease: (i) Chronic heart failure or ventricular dysfunction. (ii) Discomfort or pain due to myocardial ischemia, with or without necrosis of heart muscle. (iii) Syncope, or near syncope, due to inadequate cerebral perfusion from any cardiac cause, such as obstruction of flow or disturbance in rhythm or conduction resulting in inadequate cardiac output. (iv) Central cyanosis due to right-to-left shunt, reduced oxygen concentration in the arterial blood, or pulmonary vascular disease.")

[3] *See* C.F.R. Pt. 404, Subpt. P, App. 1, 11.14 (requiring "A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a)")

...

> CT scan of [Plaintiff's] cervical spine and total body bone scan done in August 2013 showed only mild degenerative changes and no evidence of metastatic disease. Bilateral mammography done in October 10, 2013 was also negative for metastatic disease. (Ex. 12F/32).

*Id.* The relevant listing for breast cancer, Listing 13.10, requires one of the following listed conditions:

> A. Locally advanced cancer (inflammatory carcinoma, cancer of any size with direct extension to the chest wall or skin, or cancer of any size with metastases to the ipsilateral internal mammary nodes); or
>
> B. Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases; or
>
> C. Recurrent carcinoma, except local recurrence that remits with anticancer therapy; or
>
> D. Small-cell (oat cell) carcinoma; or
>
> E. With secondary lymphedema that is caused by anticancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity. (See 13.00K4b.) Consider under a disability until at least 12 months from the date of the surgery that treated the secondary lymphedema. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 13.10. Thus, it is clear from the ALJ's discussion of the clinical findings related to Plaintiff's status post breast cancer that Plaintiff did not meet Listing 13.10. Therefore, Plaintiff's first contention fails.

**B. The ALJ Properly Determined that Plaintiff Could Perform Past–Relevant Work.**

Plaintiff next challenges the ALJ's finding at step four that, prior to July 1, 2014, Plaintiff could perform her past relevant work as a corrections clerk. In particular, she argues that there is a conflict between the Dictionary of Occupational Titles ("DOT"), which does not document an occupation under the title of "corrections clerk", and the vocational expert's ("VE") testimony

that "[c]orrections clerk is sedentary, semi-skilled, SVP 4." ECF No. 11 at 59. Plaintiff further

contends that the ALJ failed to comply with Social Security Ruling ("SSR") 00–4p's requirement

of eliciting a reasonable explanation for the conflict.

SSR 00–4p states, in part, that:

> Occupational evidence provided by a [vocational expert] should be consistent
> with the occupational information supplied by the D.O.T. When there is an
> apparent unresolved conflict between [VE] evidence and the D.O.T., the
> adjudicator must elicit a reasonable explanation for the conflict before relying on
> the VE or VS evidence to support a determination or decision about whether the
> Claimant is disabled. At the hearings level, as part of the adjudicator's duty to
> fully develop the record, the adjudicator will inquire, on the record, as to whether
> or not there is such consistency.

SSR 00-4p. In the present case and as Plaintiff readily admits, the DOT contained no

occupational listing under the title of Plaintiff's past relevant work as a "corrections clerk." In

such a situation, the ruling instructs that the ALJ proceed as follows:

> Evidence from VEs or VSs can include information not listed in the DOT. The
> DOT contains information about most, but not all, occupations. The DOT's
> occupational definitions are the result of comprehensive studies of how similar
> jobs are performed in different workplaces. The term 'occupation,' as used in the
> DOT, refers to the collective description of those jobs. Each occupation represents
> numerous jobs. Information about a particular job's requirements or about
> occupations not listed in the DOT may be available in other reliable publications,
> information obtained directly from employers, or from a VE's or VS's experience
> in job placement or career counseling. The DOT lists maximum requirements of
> occupations as generally performed, not the range of requirements of a particular
> job as it is performed in specific settings. A VE, VS, or other reliable source of
> occupational information may be able to provide more specific information about
> jobs or occupations than the DOT.

SSR 00–4p. Therefore, where the DOT lacks information with regard to a particular occupation,

the ALJ is permitted to rely on other reliable sources, in this case the VE's testimony, for that

information. In the present case, the ALJ did just that, relying on the following testimony from

the VE:

Q: And we have work as discussed at the hearing as a corrections clerk.

A: Corrections clerk is sedentary, semi-skilled, SVP-4.

Q: I'd like you to assume a person of the same age, education, and work background as [Plaintiff], capable of sedentary work provided the work would not require more than two hours of standing or walking in an eight-hour workday; would not require climbing, exposure to heights or hazards or in balancing. Would that [] the work of corrections clerk?

A: Yes

Q: And would that be as it's normally performed, as [Plaintiff] performed it, or both?

A: Both.

Q: Now, if the individual, on a sustained basis was capable of only simple, repetitive, and routine tasks due to mental health issues, memory loss and/or mood problems, would any of the past work []?

A: No, your honor.

Q: For the same reason, would you feel that none of the skills could be transferred?

A: That's correct.

ECF No. 11 at 59-60. Thus, the ALJ's decision properly complied with SSR 00-4p.

With respect to Plaintiff's second allegation, the Court finds Plaintiff's claim meritless.

SSR 00–4p's states that "[w]hen a [vocational expert ("VE")] provides evidence about the

requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about

any possible conflict between that [VE] evidence and information provided in the DOT." *Id.* If

the VE's evidence appears to conflict with the DOT, the ALJ then must obtain a reasonable

explanation for the apparent conflict. *Id.* Here, as discussed previously and despite Plaintiff's

assertions to the contrary, there was no conflict between the VE's testimony and the information

in the DOT. Further, the ALJ explicitly asked the VE at Plaintiff's hearing if his testimony was

consistent with the information in the DOT to which the VE responded affirmatively. ECF No.

11 at 60 ("Q: Has your testimony been consistent with information contained in the Dictionary of

Occupational Titles? A: Yes, sir."). Thus, the ALJ did not err at step four.

## C. The ALJ properly evaluated Plaintiff's RFC.

Plaintiff lastly argues that the ALJ's RFC determination failed to include an explicit discussion of Plaintiff's functional limitation(s) in reaching in violation of the court's holding in *Mascio v. Colvin.* 780 F.3d 632 (4th Cir.2015). Defendant counters that an explicit analysis of Plaintiff's alleged reaching limitation was not required because the record lacked evidence in support of such a limitation. The Court agrees. While it is true that the ALJ's RFC assessment contains no discussion of the functional limitation in reaching that Plaintiff now alleges, the omission of such a discussion does not require remand for the reasons that follow.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). RFC is a statement of the most a person can do in a work setting in light of his impairments, and any related symptoms. 20 C.F.R. § 404.1545. An ALJ formulates a claimant's RFC based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

The RFC assessment must ultimately address both the exertional and non-exertional capacities of the claimant. SSR 96–8p, 1996 WL 374184, at *5. Before an ALJ classifies a claimant's RFC based on exertional levels of work however (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), he must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. *Id.* at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."). These functions include a claimant's physical abilities as described in 20

C.F.R. §§ 404.1545 and 416.945 such as sitting, standing, walking, lifting, carrying, pushing, pulling, and reaching. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p, 1996 WL 374184, at *5–6. Social Security Ruling 96–8p cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and, ultimately, "an erroneous finding that the individual is not disabled." SSR 96-8p, 1996 WL 374184, at *4. SSR 96–8p further explains that "the [RFC] assessment must [also] include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7 (internal quotation marks and citations omitted).

The Fourth Circuit in *Mascio v. Colvin* found that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."*Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir.2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir.2013) (per curiam )). In doing so, the Court declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.' " *Id.*

As the Fourth Circuit explained in *Mascio,* the simple fact that the ALJ did not perform an explicit analysis of Plaintiff's reaching abilities is not enough to require remand. *Id; see also Cichocki*, 729 F.3d at 178 ("That the ALJ did not explicitly make additional superfluous findings on a function-by-function basis is not a ground for remand."). Instead, the court must determine

17

whether the ALJ's RFC analysis considered the *relevant* functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record. *Id.*

In the present case, Plaintiff points to just two documents in the entire record in which her alleged reaching limitation is discussed. The first document is a March 2013 function report completed by Plaintiff in which Plaintiff indicated that "any walking, standing, reaching, bending, squatting, kneeling, stair climbing cause[d] extreme pain and stress." See ECF No. 11 at 195. The second document consists of general discharge instructions to Plaintiff instructing that Plaintiff should "[t]ry not to lift heavy things higher than your waist or reach for shelves above your head." See ECF No. 11 at 320. Contrary to Plaintiff's contentions, it is not clear how either of these brief nominal references to "reaching" indicated that it was a relevant functional limitation meriting explicit discussion by the ALJ. Neither document referenced is representative of a medical finding, diagnosis, or observation. Moreover, subsequent assessments of Plaintiff's limitations in functioning consistently concluded that Plaintiff experienced no limitations in reaching. *See* ECF No. 11 at 933 (Exhibit 22F Physical Residual Functional Capacity Assessment, dated 07/25/2014, from Usha Natesan, M.D.) (finding no established manipulative limitations in reaching, handling, fingering, and feeling); *Id.* at 69 (Exhibit 1A State Agency Disability Determination Explanation) (finding no manipulative limitations); *Id.* at 80 (Exhibit 3A State Agency Disability Determination Explanation) (same).

"The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (internal quotation marks omitted). This includes showing proof of relevant functional limitations to be analyzed at step four. After review of all of the evidence in the record, the Court finds that reaching was neither a relevant

nor a contested function in Plaintiff's case. The ALJ was thus not required to engage in an explicit function-by-function analysis of Plaintiff's reaching abilities under *Mascio*. We therefore reject Plaintiff's claim that the alleged reaching limitation required discussion by the ALJ.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 10 March 2017

A. David Copperthite
United States Magistrate Judge